UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

March 13, 2015

LETTER TO COUNSEL

RE: *Charles Braxton v. Carolyn Colvin, Commissioner of Social Security Administration*
Civil No. TJS-13-3922

Dear Counsel:

On December 31, 2014, the Plaintiff, Charles Braxton ("Mr. Braxton"), petitioned this Court to review the Social Security Administration's final decision to deny him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 16 & 18.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF Nos. 7 & 11.) Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny both motions and remand this case for further proceedings. This letter explains my rationale.

Mr. Braxton filed applications for DIB and SSI. (Tr. 173-83.) Mr. Braxton claimed alleged disability beginning on July 1, 2007, but subsequently amended his alleged onset date to December 3, 2009. (Tr. 40, 203.) Mr. Braxton's claims were denied initially and on reconsideration. (Tr. 92-96, 103-16.) A hearing was held before an Administrative Law Judge ("ALJ") on August 16, 2012. (Tr. 26-65.) On August 28, 2012, the ALJ determined that Mr. Braxton was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 11-25.) The Appeals Council denied Mr. Braxton's request for review (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ evaluated Mr. Braxton's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Mr. Braxton was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since July 1, 2007. (Tr. 13.) At step two, the ALJ found that Mr. Braxton suffered from the severe impairments of obesity, degenerative joint disease (bilaterally), status-post left femoral fracture, and borderline intellectual functioning. (*Id.*) At step three, the ALJ found that Mr. Braxton's impairments, separately and in combination, failed to meet or

equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings") (Tr.14-16). The ALJ determined that Mr. Braxton has the RFC

> Perform light work as defined in 20 CFR 404.1567(b) and 416.67(b) with the additional limitation that he can do work that occasionally requires balancing, stooping, kneeling, crouching, crawling, and climbing (except never requires the use of ladders, ropes and scaffolds). The claimant has to have a sit/stand option that allows him to sit or stand alternatively, at will. He is limited to occasional use of his left lower extremity for push/pulling. He should avoid concentrated exposure to extreme heat, wetness, humidity, and hazards such as unprotected heights and moving machinery. Because of his mental impairments, he can perform jobs consisting of unskilled, routine, and repetitive tasks.

(Tr. 16.)

At step four, the ALJ determined that Mr. Braxton is unable to perform any past relevant work. (Tr. 20). At step five, the ALJ found that given Mr. Braxton's age, education, work experience, and RFC, and based on the testimony of the vocational expert, there are jobs that exist in significant numbers in the national economy that he can perform, including "cashier," "parking lot attendant," and "production worker." (Tr. 20-21). Therefore, the ALJ found that Mr. Braxton was not disabled under the Social Security Act. (Tr. 21).

Mr. Braxton's chief argument is that the ALJ's step three finding that Mr. Braxton did not meet Listing 12.05 is not supported by substantial evidence. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). In addition to meeting or medically equaling the criteria in the listings, a claimant's impairment must also meet the duration requirement set forth in 20 C.F.R. § 404.1509 in order to satisfy a listing. *See* 20 C.F.R. § 404.1525(c). An ALJ must analyze whether the claimant's impairment meets or equals a listing only when there is evidence in the record to support such a determination. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) ("Under *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments.")

The requirements of Listing 12.05 ("Intellectual Disability") are as follows.

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

>The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
>B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
>C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
>D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

>The Listings explain that
>
>[t]he structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations.

*Id.*

A summary of the record as it relates to Mr. Braxton's alleged intellectual disability is warranted. At the time of the ALJ's decision, Mr. Braxton was 39 years old. He was raised by his maternal great-grandmother, as his mother died in his infancy and his father was "not around." (Tr. 333.) The last grade he completed in school was the eighth grade, where he was enrolled in a special education class. He left school in the ninth grade because of "family problems." (Tr. 333.) His "grade equivalents" in reading, spelling, and math are K.0, K.9, and 1.1, respectively. (ECF No. 16-1 at 18.) He has never lived by himself, and has always lived with a family member or significant other. He relies on others to remind him to bathe and brush his teeth (Tr. 337-38.) He has never possessed a driver's license and is able to use public transportation only with the assistance of a family member. (Tr. 46, 57.) He also "needed help" completing his application for disability benefits, and "could not understand a lot of things [the SSA interviewer] was

asking . . . [and] when asked to sign the 827 his cousin had to direct him." (Tr. 194.)

Edward Ansel, Ph.D. conducted a psychological evaluation of Mr. Braxton. (Tr. 333-35.) Dr. Ansel administered the WAIS-IV and Wide Range Achievement Test-4. Dr. Ansel certified that the results of the tests "yielded an accurate estimate of his current level of functioning." (Tr. 333.) According to Dr. Ansel's test, Mr. Braxton is in the "Extremely Low range of intelligence," and his full scale IQ of 55 places him in the lowest 0.1% of his age group. (Tr. 334.) Dr. Ansel opined that Mr. Braxton's intellectual functioning "in the mildly to moderately mentally retarded range. . . . has been the case since the developmental period." (Tr. 334-35.)

As stated above, an individual with a full scale of IQ of 55 meets paragraph B of Listing 12.05. Here, however, the ALJ "implicitly found that the IQ scores set forth in Dr. Ansel's report were not valid." (ECF No. 18-1 at 15.) The ALJ's "implicit" finding of the invalidity of Dr. Ansel's report, however, is not sufficient to permit this Court to review the finding to determine whether it is based on substantial evidence. While ALJs are not required to accept the results of IQ tests, they are required to explain why they find that a test result is invalid or should otherwise be rejected. For example, in *Edge v. Astrue*, 627 F. Supp. 2d 609, 613 (E.D.N.C. 2008), a court was able to review an ALJ's rejection of an IQ test because the ALJ adequately explained his reasoning. The court found that "it was reasonable for the administrative law judge to find the IQ tests unreliable" because the claimant in that case had been unable to complete the test due to visual impairments, had been unmotivated at the time of testing, and had put forth a poor effort. *Id.*

In this case, however, there is no evidence that indicates that Mr. Braxton's IQ test was unreliable. The ALJ nonetheless gave "little weight to the opinion of [Dr. Ansel]" because Mr. Braxton "can read a basic grocery list, use public transportation, and was able to work as a pizza maker mentally." (Tr. 15, 19.) It is not clear how the ALJ determined that these limited functional abilities invalidate or otherwise call into question Mr. Braxton's IQ score of 55. It may be that the ALJ disagrees with Dr. Ansel's interpretation of the IQ test results, or believes that the test itself was invalid, or perhaps believes that Mr. Braxton was malingering. It may be that the ALJ found the test result to be valid, but nonetheless found that Mr. Braxton did not meet the diagnostic criteria in the introductory paragraph to Listing 12.05. In any event, the ALJ's "implicit finding" (as it is described by the Commissioner) is not reviewable by this Court. An ALJ can consider any number of factors in deciding whether an IQ test is valid and whether a claimant had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," but must explain how any conclusions are reached. In the cases cited by the Commissioner, the ALJs did just that. *See Mazan v. Comm'r, Soc. Sec.*, No. CCB-13-1831, 2014 WL 1884506, at *2 (D. Md. May 8, 2014) ("[T]he ALJ assigned little weight to Dr. Ansel's IQ score and opinion, noting that Dr. Ansel had been erroneously informed that Ms. Mazan had special education in school, when in fact she was in a regular education program, that Ms. Mazan provided contradictory information regarding whether she or her daughter completed her function report and work report, that Ms. Mazan successfully worked part-time for many years, that Ms. Mazan effectively used public transportation to travel through the community, and that Dr. Ansel failed to provide an explanation or analysis for his conclusions."); *Nance v. Astrue*, No. TMD-08-2899, 2010 WL 2039039, at *2 (D. Md. May 20, 2010) ("Here, the ALJ acknowledged Dr. Ansell's IQ test score,

but assigned it very little weight. He did so because it was based on 'false' information by Claimant; specifically, that he attended special education classes.") In this case, the ALJ did not adequately explain his findings.

The ALJ's rejection of Dr. Ansel's opinion about Mr. Braxton's full scale IQ of 55 is not supported by substantial evidence. Remand is appropriate to allow an ALJ to fully explore whether Mr. Braxton's full scale IQ of 55 is a valid score, and whether he meets the requirements of Listing 12.05, including the diagnostic criteria set forth in the introductory paragraph. Because I will remand this case on this issue, I will not address Mr. Braxton's other arguments.

For the reasons set forth herein, Mr. Braxton's Motion for Summary Judgment (ECF No. 16) and the Commissioner's Motion for Summary Judgment (ECF No. 18) will be DENIED. The ALJ's opinion will be VACATED and the case will be REMANDED for further proceedings. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

_____/s/_____
Timothy J. Sullivan
United States Magistrate Judge